856 So.2d 686 (2003)
Kelcy WILBURN a/k/a Kelcy Wilburn, Jr. a/k/a Kelcy Wilborn, Jr. a/k/a "June-June", Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01117-COA.
Court of Appeals of Mississippi.
September 23, 2003.
*687 Thomas C. Levidiotis, Oxford, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before KING, P.J., BRIDGES and LEE, JJ.
BRIDGES, J., for the Court.
¶ 1. On April 9, 2002, Kelcy Wilburn, a/k/a Kelcy Wilburn Jr., a/k/a Kelcy Wilborn, Jr., a/k/a "June-June," was tried for sale of cocaine before Honorable Henry L. Lackey at the Lafayette County Circuit Court. After two days of testimony, the jury delivered a verdict of guilty. Wilburn was sentenced to thirty years in prison as an habitual offender. From this conviction *688 and sentence, Wilburn appeals to this court.

STATEMENT OF THE ISSUES
I. WAS THE AUDIO TAPE RECORDING OF THE TRANSACTION ADMITTED INTO EVIDENCE PROPERLY IDENTIFIED AND AUTHENTICATED?
II. WAS THERE A PROPER CHAIN OF CUSTODY FOR THE TAPE?
III. DID THE TRIAL COURT ERR WHEN IT IMPOSED AN ENHANCED SENTENCE BASED UPON WILBURN'S STATUS AS A HABITUAL OFFENDER WITHOUT CONDUCTING A HEARING?

FACTS
¶ 2. On February 1, 2001, Agent Allan Castle of the Oxford-Lafayette Metro Narcotics Unit planned a controlled purchase of drugs with two confidential informants (CIs). The informants were James Williams and Vernon "Bo" Padgett. The CIs were provided $125 in official funds to purchase the drugs. Agent Castle along with Agent Sean Lynch were parked about a half mile away from the residence that the CIs entered to make the purchase. Padgett had a body wire and Williams had a tape recorder during the buy. The audio portion of the purchase was transmitted to the officers parked down the street. The transaction was recorded and, according to the CIs, the seller was Kelcy Wilburn.
¶ 3. The CIs met the officers at Metro Narcotic Unit Headquarters and reported that they purchased cocaine from Kelcy Wilburn. Both CIs gave a statement of what had occurred that night. Wilburn was arrested and tried for the sale of cocaine. The jury found him guilty and the judge sentenced him to thirty years as a repeat offender.

ANALYSIS

I. WAS THE AUDIO TAPE RECORDING OF THE TRANSACTION ADMITTED INTO EVIDENCE PROPERLY IDENTIFIED AND AUTHENTICATED?
¶ 4. Wilburn claims that the tape should not have been put into evidence and that the prosecution failed to establish that it was his voice on the tape recording of the drug sale. The Mississippi Supreme Court has stated that evidence must first satisfy the relevancy test of M.R.E. 401 before it may be admitted at trial. Stromas v. State, 618 So.2d 116, 118 (Miss. 1993). This rule states that something is relevant if:
[it has a] tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
M.R.E. 401.
¶ 5. The court in Stromas continued by stating that "once evidence is determined to be relevant, it must then be properly authenticated and identified under Miss. R. Evid. 901." Stromas, 618 So.2d at 118. This rule provides the requirements for the admission of a tape recording as evidence in a trial. Mississippi Rule of Evidence 901(b)(5) states:
Voice Identification. [i]dentification of a voice, whether heard firsthand or through mechanical of[or] electronic transmission or recording, [may be properly authenticated] by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.
¶ 6. In this case, the tape was properly identified and authenticated. There was ample testimony by the officers and informants that they all had previous contacts *689 with Wilburn. Officer Castle testified that he had known Wilburn for several years. Captain Scott Mills, the agent in charge of the Lafayette County Metro Narcotics unit, testified that he had known Wilburn since the late 1980s or early 1990s. James Williams, one of the CIs, testified that he knew Wilburn for a year. Padgett, the other CI, also testified that he knew Wilburn for a year. Since they had all known Wilburn for a period of time, the officers would be in a position to recognize his voice.
¶ 7. There was no abuse of discretion by the trial court in admitting the tape into evidence.

II. WAS THERE A PROPER CHAIN OF CUSTODY FOR THE TAPE?
¶ 8. Wilburn next claims that the prosecution failed to establish the chain of custody for the tape recording. He claims that the tape could have been tampered with or replaced. The tape was taken from the CI and was labeled by Officer Castle with his initials. It was then placed in an envelope and into a file cabinet. Wilburn is particularly concerned with the fact that a metal tab is missing from the envelope. Wilburn claims that there are doubts of the authenticity of the tape because of the chain of custody and that no reasonable juror could have found the defendant guilty. The State also concedes that this was objected to at trial.
¶ 9. A defect in a chain of custody arises if there is any suggestion of tampering or substitution of evidence. Wells v. State, 604 So.2d 271, 277 (Miss. 1992). The test for improper chain of possession of evidence is whether there is any reasonable inference of likely tampering with or substitution of evidence. Williams v. State, 794 So.2d 181, 185 (¶ 10) (Miss.2001). The burden of proof in establishing tampering with evidence is on the defendant. Id. In this case, Wilburn did not present any evidence that the tape was tampered with. While the envelope the tape was placed in did not have the metal tab, the envelope was not placed in evidence. Furthermore, the testimony of the officers provided the jury with information of who had the tape and where the tape was located at all times. Therefore, we find that there was no abuse of discretion by the trial court.

III. DID THE TRIAL COURT ERR WHEN IT IMPOSED AN ENHANCED SENTENCE BASED UPON WILBURN'S STATUS AS A HABITUAL OFFENDER WITHOUT CONDUCTING A HEARING?
¶ 10. Wilburn finally claims that the court used an improper procedure in his sentencing. He claims that he was not given a proper hearing outside the presence of the jury concerning his prior convictions as is required by Uniform Circuit and County Court Rule 11.03. This rule states: "If the defendant is convicted or enters a plea of guilty on the principal charge, a hearing before the court without a jury will then be conducted on the previous convictions."
¶ 11. When habitual offender status is alleged and where the accused goes to trial, the trial court is required to hold a separate hearing without a jury in order to determine whether habitual status will be imposed. Nathan v. State, 552 So.2d 99, 106 (Miss.1989). Rule 11.03 of the Uniform Rules of Circuit and County Court Practice requires that sentencing as an habitual offender occur at a separate hearing outside the presence of the jury. Pate v. State, 838 So.2d 343, 347(¶ 9) (Miss. Ct.App.2002). In this case, Wilburn was not given such a hearing. In fact, the sentence of thirty years was given in the presence of the jury just after the guilty *690 verdict was returned. Accordingly, this matter is remanded to the trial court for re-sentencing.
¶ 12. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT OF CONVICTION FOR THE SALE OF COCAINE IS AFFIRMED. THE MATTER IS REMANDED FOR SENTENCING ONLY. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAFAYETTE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.