# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00563-SCT

*AIRES CHAMBLISS*

*v.*

*STATE OF MISSISSIPPI*


DATE OF JUDGMENT: 2/20/2004
TRIAL JUDGE: HON. LAMAR PICKARD
COURT FROM WHICH APPEALED: JEFFERSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: M. A. BASS, JR.
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: BILLY L. GORE
DISTRICT ATTORNEY: ALEXANDER MARTIN
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 6/09/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1. Aires Chambliss was tried by a Jefferson County Circuit Court jury on two counts of aggravated assault. On count one, the jury convicted Chambliss of causing serious bodily injury to Demetrius Miller by throwing a foreign substance on Miller which resulted in second degree burns. Count two charged Chambliss with the same crime against Christopher Carradine. A directed verdict was granted on count two of aggravated assault, and the case was submitted to the jury on simple assault. The jury returned a verdict of not guilty of simple assault against Carradine. Chambliss was sentenced to serve ten years in the custody of the

Mississippi Department of Corrections. His post-trial motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict was denied and this appeal followed. Chambliss' allegations of error concern the weight and sufficiency of the evidence. Finding no error, we affirm the conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. On July 14, 2003, Christoper Carradine, Demetrius Miller, and two of their friends were sitting outside at the Fayette Manor Apartments when Aires Chambliss drove up and confronted Carradine. Chambliss was married to Carradine's mother but they did not live together. Carradine kept asking Chambliss to leave, and after the argument became heated Chambliss went to his car and left. When Chambliss returned to the apartments, he was carrying a white container similar to an anti-freeze jug. Chambliss shook the container, and a few drops landed on Carradine's foot. Carradine kicked his shoe off, yelled that his foot was hot, and ran inside the apartment to wash the substance off his foot.

¶3. After Carradine went inside Chambliss stood behind Miller and splashed the unidentified caustic substance down Miller's back and leg. Miller began to yell that it was hot, and he ran inside to wash the substance off and was taken to the Fayette Hospital where he was told to sit in the waiting room since he was not bleeding. When Miller did not get any attention, his friends took him to Natchez Regional Medical Center. When he arrived in Natchez the doctors placed him in a shower for thirty minutes to wash all of the substance off his body. Dr. Markus B. Stanley determined that Miller suffered from second degree burns. Dr. Stanley testified that second degree burns can be life threatening because there is a loss of the protective layer of skin which increases the risk of secondary infections. Second degree

burns may also cause proteins to enter into the bloodstream causing damage to the kidneys and possible loss of kidney function. Dr. Stanley sent Miller to the Baton Rouge Burn Center for treatment.

¶4.    After throwing the unidentified caustic substance on Miller, Chambliss left the scene and drove around all night. During his drive, Chambliss threw the bottle containing the substance out the window of his car, and the bottle was never recovered. Barbara Carradine, Carradine's mother and Chambliss' wife, called the sheriff's department to report the distrubance. After talking to Barbara, Jefferson County Deputy Sheriff Shawn King went looking for Chambliss. King found Chambliss inside his car at an Exxon gas station parking lot around 7 a.m. the next morning. Chambliss denied he had assaulted anyone with acid or that he knew anything about a disturbance at the Fayette Manor Apartments. King requested that Chambliss come to the station house for questioning. At the station, King read Chambliss his *Miranda* rights and began to question him about the disturbance. However, King noticed that Chambliss had burns on his left arm and sent him to the hospital for treatment.

¶5.    After Chambliss received treatment for the burns on his arm, he went back to the station where he voluntarily gave a statement to Jefferson County Sheriff Peter Walker. After being advised of his rights a second time, Chambliss admitted throwing a substance on Miller, but he claimed he did not know the substance in the bottle was dangerous.

¶6.    Chambliss was tried by a Jefferson County Circuit Court jury on two counts of aggravated assault. Both Carraadine and Miller testified that Chambliss was the person who threw the substance. Deputy Shawn King testified that he was the responding officer and that after talking to Barbara he went looking for Chambliss and found him the next morning. King

3

testified that Chambliss denied throwing a substance on Carradine and Miller. Dr. Stanley, accepted as an expert in the field of trauma medicine, testified that he was the director of the emergency department at the Natchez Regional Medical Center. Dr. Stanley testified that Miller's burns were extremely serious and life threatening. At the close of the State's case-in-chief, Chambliss moved for a directed verdict as to both count one and count two. The trial judge granted the directed verdict on count two of aggravated assault and reduced the charge to simple assault.

¶7. Sheriff Peter Walker testified as a character witness for the defense. Sheriff Walker testified that he talked to Chambliss, a former student and employee of his, about the incident. After Sheriff Walker advised him of his rights a second time, Chambliss voluntarily confessed that he threw the substance on Miller but claimed he did not intend to hurt anyone. Sheriff Walker also stated that he believed Chambliss to be an honest person. On cross, Sheriff Walker admitted that Chambliss did lie when he denied throwing the substance in his prior statement to the police. After being advised on his right to testify, Chambliss chose to testify in his own behalf. Chambliss, throughout his testimony, maintained that he did not intend to hurt anyone because he thought the bottle contained water. Chambliss also testified that he grabbed the bottle from his brother's porch earlier that day because he needed to put some water in his radiator. Chambliss admitted that he was mad at both Carradine and his wife and that he threw the substance to scare them because he thought it was water. Chambliss also testified that King did not find him at the gas station. Chambliss testified that he noticed holes in his clothes and wanted to find out what happened so he went out to search for the police.

4

Chambliss testified that he was the one who found King at the gas station and that King did not find him.

¶8.     At the close of all the evidence, Chambliss renewed his motion for directed verdict. The trial judge denied the motion for directed verdict, and the jury returned a verdict finding Chambliss guilty of aggravated assault against Miller and not guilty of simple assault against Carradine.    Chambliss filed a motion for a new trial or, in the alternative, for judgment notwithstanding the verdict which was denied by the trial judge.   Chambliss now appeals to this Court raising the following issue:

> The evidence was insufficient to support a verdict of guilty in that it failed to prove beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that Appellant was guilty; and, the Appellant should be discharged because the verdict of the jury and judgment of the Court is contrary to the overwhelming weight of the evidence.

## DISCUSSION

¶9.     We will address both the sufficiency and weight of the evidence with one   analysis as the same facts are applicable to both issues.

### 1.  Weight of the Evidence

¶10.     Chambliss argues that the verdict of the jury was against the overwhelming weight of the evidence.   However, Chambliss does not tell us why the verdict is against the weight of the evidence nor does he apply any facts to the law cited in his brief.   The standard of review for a denial of a motion for a new trial is well settled:

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.   *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997).   We have stated that on a motion for new trial, the court sits as a

thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000). However, the evidence should be weighed in the light most favorable to the verdict. *Herring*, 691 So. 2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. *McQueen v. State*, 423 So. 2d 800, 803 (Miss. 1982). Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. *Id*. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. *Id*. Instead, the proper remedy is to grant a new trial.

*Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005) (footnotes omitted).

### 2. Sufficiency of the Evidence

¶11. Chambliss also contends that the evidence was insufficient to support the conviction for aggravated assault against Miller and that he is entitled, as a matter of law, to reversal and discharge. "When reviewing the sufficiency of the evidence, this Court looks at the lower court's ruling 'on the last occasion when the sufficiency of the evidence was challenged.'" *Id.* (quoting *Ballenger v. State*, 667 So. 2d 1242, 1252 (Miss. 1995) (citations omitted)). The last occasion upon which Chambliss challenged the sufficiency of the evidence was in his motion for a new trial. Therefore, we will consider all of the evidence presented throughout the course of the trial.

¶12. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush*, 895 So. 2d at 843, (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (citations omitted)). Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor

6

of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Id.* (citing *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)). However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Id.*

### 3. Analysis

¶13. In light of the evidence presented at trial, and giving the benefit of favorable inferences to the State, the verdict is not contrary to the overwhelming weight of the evidence. Sitting as a limited "thirteenth juror" in this case, we cannot view the evidence in the light most favorable to the verdict and say that an unconscionable injustice resulted from this jury's rendering of a guilty verdict. Furthermore, considering the evidence in light most favorable to the State, there was sufficient evidence to convict Chambliss of aggravated assault. Miss Code Ann. § 97-3-7 states in pertinent part:

> (2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

¶14. In the case sub judice, both Carradine and Miller testified that it was Chambliss who threw the substance on them. Furthermore, Chambliss, testifying on his own behalf, admitted

7

to throwing the substance on Miller. In admitting that he threw the substance on Miller, Chambliss claimed he thought the liquid was only water and he did not intend to hurt Miller and only intended to scare him. It was also established that Miller suffered serious injury to his right side. Therefore, the only question left for the jury was whether Chambliss intended to hurt Miller and whether Chambliss thought that the bottle contained water.

¶15. The question of Chambliss' intent and knowledge is a question for the jury. *Shanklin v. State*, 290 So. 2d 625, 627 (Miss. 1974). "The intent to commit a crime or do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent." *Id.* There was ample evidence on which the jury could properly determine that Chambliss did intend to hurt Miller. Miller testified that after Chambliss threw the substance on him, Chambliss stated that Miller was "messed up now." Furthermore, Carradine testified that Chambliss was drunk, beating on his car and was mad. Chambliss even testified to the fact that he was mad at both Carradine and his mother. There was also testimony that after the liquid splashed on Carradine's foot he was yelling that it was hot and kicked off his shoe. After Carradine yelled that his foot was hot and burning, Chambliss splashed the substance down Miller's shoulder, back, and leg.

¶16. The question of whether or not Chambliss thought that water was in the jug is also for the jury to determine. "It goes without saying that the jury is the final arbiter of a witnesses's credibility." *Morgan v. State*, 681 So. 2d 82, 93 (Miss. 1996) (citing *Harris v. State*, 527 So. 2d 647, 649 (Miss. 1988)). During trial, there was testimony that Chambliss first denied being at the scene and also denied throwing the substance on Miller and then later admitted to throwing the substance. Deputy King testified that he found Chambliss at the gas station but

Chambliss testified that he went out searching for the police and the police did not find him because he was the one searching for the police. Here, the jury simply chose not to believe Chambliss when he claimed that he thought water was in the jug and did not know that it was a harmful substance. "The jury is the sole judge of the credibility of the witnesses and the weight and worth of their testimony. They may believe or disbelieve, accept or reject the utterance of any witness." *Pinson v. State*, 518 So. 2d 1220,1224 (Miss. 1988) (quoting *Smith v. State*, 463 So. 2d 1102 (Miss. 1985)). It is not this Court's function to determine whose testimony to believe. *Id.* (citing *Thomas v. State*, 495 So. 2d 481 (Miss. 1986)).

## CONCLUSION

¶17.  We find that there was sufficient evidence to support the verdict that Chambliss was guilty as to the charge of aggravated assault against Demetrius Miller. In light of the facts, any rational juror could have found beyond a reasonable doubt that all of the elements had been met by the State in proving aggravated assault. Furthermore, in light of the evidence presented at trial, and giving the benefit of favorable inferences to the State, the verdict is not contrary to the overwhelming weight of the evidence. Chambliss' assignments of error are without merit. We affirm the judgment of the trial court.

¶18.  **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN (10) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**