# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-01781-SCT

*LARRY PRESS WELLS a/k/a LARRY P. WELLS*
*a/k/a LARRY PRESTON WELLS*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/30/2009 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, JR. |
| TRIAL COURT ATTORNEYS: | JOHN CHRISTOPHER GARGIULO |
| | GLENN F. RISHEL, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER N. AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; VACATED IN PART |
| | AND REMANDED - 02/12/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Larry Press Wells was convicted of possessing cocaine with the intent to distribute in the Circuit Court of the First Judicial District of Harrison County. The trial court sentenced Wells to sixty years in the custody of the Mississippi Department of Corrections without parole, as a recidivist under Mississippi Code Section 99-19-81 and as a subsequent drug offender under Section 41-29-147. We affirm Wells's conviction and mandatory thirty-year

sentence under Section 99-19-81. We find, however, that the trial court erred in reading Section 41-29-147 as requiring that Wells be sentenced to twice the time authorized for a second or subsequent drug conviction. Section 41-29-147 provides for discretionary (not mandatory) sentencing. Therefore, we vacate that portion of Wells's sentence and remand the matter for resentencing.

## FACTS AND PROCEDURAL HISTORY

¶2. Wells was arrested on May 24, 2007, for allegedly possessing cocaine with the intent to transfer to an undercover police officer. On that day, Officer Michael Guynes of the Gulfport Police Department conducted an undercover drug sting.[1] Guynes used a tape recorder secreted on his person to record the conversation between himself and the prospective seller, and he had marked bills with which to conduct the expected drug purchase. Guynes also had a crack pipe for use as a prop during the buy. He was given a "takedown signal" to indicate to the police officers following the sting to come and arrest the suspect. In this case, his backup was instructed to take down (arrest) the suspect when Guynes asked for his phone number.

¶3. After ensuring that he looked sufficiently disreputable, and armed with the money, tape recorder, and faux crack pipe, Officer Guynes drove to the Magnolia Grove area of Gulfport to begin the sting. Guynes drove up to Wells and asked him whether he would sell Guynes a "40," meaning a single hit of crack, or forty dollars' worth. Wells said that he could get that for Guynes, got into the car, and led Guynes to a small grove of trees and bushes. On

---

[1]The relevant facts are taken generally from Guynes's testimony at trial and the tape recording of his interaction with Wells, designated as State's Exhibit S-1.

the tape, Wells is heard saying they were going to get "high," and Wells also said "I want to get me a hit." Guynes testified that he then gave Wells forty dollars out of the marked currency he had been provided and Wells walked around the bushes to a group of people who were waiting there. Guynes admitted on cross-examination that he could not see Wells while he was behind the bushes.

¶4.     When Wells returned to the vehicle, there was some confusion about whether he had bought some crack for Guynes's use, or only for himself. Guynes testified that he saw crack in Wells's hand. Wells took the prop crack pipe and placed the crack cocaine in it, asking Guynes for some "fire," or a way to light the drug so it could be smoked. Despite some confusion as to who would smoke the crack first, Wells ultimately asked Guynes to smoke some before Wells gave him the rest. At that point, Guynes gave the takedown signal, and law officers converged on the pair quickly, arresting Wells.

¶5.     One of the arresting officers was Mark Joseph. Joseph testified that when he arrived at the car, he opened the passenger door, grabbed Wells by his wrist, dragged him to the ground, and handcuffed him. Joseph testified that, as Wells was lying on the ground, Joseph observed a glass pipe and a twenty-dollar bill (one of the marked bills provided to Guynes) in the grass near Wells's hand. He also found an "off-white rock-like substance approximately maybe four inches away from the pipe." The Mississippi Crime Laboratory tested the substance and determined that it contained 0.04 grams of cocaine.[2] The prop pipe used by Guynes was not tested for residue, and Guynes testified that he did not know

---

[2]0.04 grams is roughly 1/1,000 of an ounce.

whether the prop pipe itself contained some small amount of cocaine residue as a result of Wells having placed the rock into the pipe. No other drugs were found on Wells's person.

¶6. On October 1, 2007, more than four months after Wells was arrested, the Harrison County grand jury returned an indictment against Wells for possession of cocaine with the intent to transfer or distribute pursuant to Mississippi Code Section 41-29-139(a)(1). On October 11, 2007, the State moved to amend Wells's indictment to reflect his habitual-offender status under Mississippi Code Section 99-19-81, which would mean that, if he was convicted, Wells's sentence would be the maximum sentence allowed by law, thirty years without possibility of parole. After several continuances, Wells's trial finally was set to take place on April 29, 2009, nearly two years after his arrest.

¶7. On April 24, 2009, five days before Wells's trial began, the State moved to amend his indictment to enhance his penalty as a subsequent drug-offender pursuant to Mississippi Code Section 41-29-147, doubling the maximum sentence to sixty years without possibility of parole. In support of the motion, the State listed a prior drug conviction that it already had used in October of 2007 to amend his indictment to include habitual-offender status.

¶8. Wells's trial began on April 29, 2009. The jury was instructed on the crime of possession of cocaine with intent to transfer or distribute and the lesser-included offense of simple possession and convicted Wells of possession with intent to distribute. On the day of Wells's conviction, the trial court granted the State's motion to amend his indictment to enhance his sentence under the subsequent-drug-offender statute, making him eligible for a sentence of sixty years without parole. After he was convicted, the trial court held a sentencing hearing in the presence of the jury and ruled that the prerequisites to habitual-

4

offender status and enhanced punishment had been met. The court sentenced Wells to sixty years without the possibility of parole.

¶9. Wells raises the following points of error on appeal:

I. **The evidence was insufficient to support the verdict; alternatively, the verdict was against the overwhelming weight of the evidence.**

II. **The trial court committed plain error in granting jury instruction S-3, given as instruction D-2A.**

III. **The trial court erred in sentencing Wells as a habitual offender and a second or subsequent drug offender.**

IV. **Wells's constitutional right to a speedy trial was violated.**

### ANALYSIS

I. **The evidence against Wells was sufficient to support the verdict and the verdict was not against the overwhelming weight of the evidence.**

¶10. Wells was convicted under Section 41-29-139(a)(1), which makes it illegal for a person "knowingly or intentionally . . . [to] possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance. . . ." Miss. Code Ann. § 41-29-139(a)(1) (Rev. 2013). So, to convict Wells of possession of cocaine with intent to distribute, the State had to prove that he (1) knowingly or intentionally (2) possessed cocaine (3) with the intent to distribute it. Wells argues that the evidence presented was insufficient to prove his guilt beyond a reasonable doubt.

¶11. When a defendant challenges the sufficiency of the evidence against him, this Court will affirm his conviction when, viewing the evidence in favor of the State and keeping in mind the State's burden of proving guilt beyond a reasonable doubt, the evidence is "of such

5

quality and weight that . . . reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense." **Bush v. State**, 895 So. 2d 836, 843 (Miss. 2005) (quoting **Edwards v. State**, 469 So. 2d 68, 70 (Miss. 1985)). In other words, if reasonable people can disagree about whether the State proved the defendant's guilty beyond a reasonable doubt, the evidence is sufficient. Only when this Court finds that "reasonable men could not have found beyond a reasonable doubt that the defendant was guilt" may we reverse and render a defendant's conviction. **Bush**, 895 So. 2d at 843 (quotation omitted).

¶12.    Wells relies on the fact that, when he returned to the vehicle with the drugs, at first it was not apparent to Guynes whether Wells was going to smoke all the crack cocaine himself or give some of it to Guynes. Wells argues that his own "express statements indicated that his intent was to get a hit of cocaine for himself." Ultimately, Wells argues that, because his transfer of the cocaine was dependent upon Guynes's smoking the crack that Wells first put into the pipe as a test to ensure Guynes's trustworthiness, Wells had not yet formed the intent to transfer the crack when Guynes called out the takedown signal.

¶13.    It is true, as Wells argues, that to obtain a conviction for possession with intent to distribute, "[t]here must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond a reasonable doubt[,] that the defendant did in actual fact intend to distribute or sell the cocaine, not that he *might* have such intent." **Stringfield v. State**, 588 So. 2d 438, 440 (Miss. 1991). There must be "clear evidence" of the defendant's intent to transfer the drugs he possesses. **Id.** The question of intent is one for the jury and "can be determined only by the act itself, surrounding circumstances, and expressions made

6

by the actor with reference to his intent." ***Chambliss v. State***, 919 So. 2d 30, 35 (Miss. 2005) (quotation omitted). Ultimately, the evidence must be something that a jury can "sink its teeth" into. ***Stringfield***, 588 So. 2d at 440.

¶14. Considering the evidence in the light most favorable to the State, we hold that there was sufficient and clear evidence to convict Wells of possession of cocaine with intent to transfer. Guynes approached Wells and asked him whether he could get him a "forty," meaning forty dollars' worth of crack, to which Wells responded in the affirmative. Wells showed Guynes where to drive to get a "forty," took money from Guynes, and returned with drugs. While there was some confusion about whether he was planning to cheat Guynes and smoke most of it himself, Wells said that he would give Guynes his drugs if Guynes smoked the crack that Wells had put into the pipe. When Guynes asked where his crack was, Wells responded, "I got you. This is mine. I bought this. . . ." The State presented sufficient evidence of the surrounding circumstances and the expressions of the defendant for the jury to find beyond a reasonable doubt that Wells possessed a controlled substance and intended to transfer it to another person, the conditional nature of the transfer notwithstanding.[3] Finally, Wells put crack cocaine in a pipe and attempted to hand it to Guynes—clearly an act evincing his intent to transfer a controlled substance to another. This was a jury question; the

---

[3]In this respect, it is fairly apparent that drug dealers typically offer drugs on the condition that the buyers are not undercover police officers who will arrest them when the deal is concluded. Such is the nature of the beast. *See, e.g.*, ***People v. Samuels***, 780 N.E.2d 513, 516 (N.Y. 2002) (defendants asking buyer to "take a hit" before consummating drug transaction was conduct typical of drug sale operations in order to thwart the police, and constituted a factor, among others, which supported the conclusion that defendants had ability to sell crack cocaine).

jury heard the audio recording of the encounter, it heard Officer Guynes's description of the event, and the jury found against the defendant. This assignment of error has no merit.

¶15.    For those same reasons, we also must hold that Wells's conviction was not against the weight of the evidence. Weighing the evidence in the light most favorable to the verdict, we cannot say that Wells's conviction resulted in an unconscionable injustice. *See **Bush***, 895 So. 2d at 844-45. The State proved that Wells was a willing participant in a drug deal, that he took the undercover officer's money, that he left momentarily and returned with a controlled substance, and that he affirmatively stated that he planned to give the crack to the officer so long as he could trust him. The verdict was not against the overwhelming weight of the evidence.

> **II.** **The trial court did not commit plain error in granting jury instruction S-3, given as instruction D-2A.**

¶16.    Instruction D-2A was a lesser-included-offense instruction that informed the jury, in pertinent part, as follows:

> If you find that the State has failed to prove all of the essential elements of the crime of Possession of a Controlled Substance with Intent, you may consider the lesser charge of Possession of a Controlled Substance.

Both parties agreed to this instruction, with counsel for Wells going so far as to say, "Well, your Honor, I'd like the instruction to be granted, and I think the State would feel more comfortable with theirs. And I have no objection to the State's instruction, so let's use that one." As no objection to the instruction was lodged at trial, Wells cannot now complain that it was given in error. *See **Irby v. State***, 893 So. 2d 1042, 1047 (Miss. 2004) ("Irby cannot

8

now argue that the instruction was in error since he dropped the objection and agreed that the instruction, as amended and given, was appropriate.")

¶17.  Wells argues that the trial court's giving the instruction was plain error because it deprived him of his "fundamental constitutional right to a jury determination that he is guilty of each and every element of that crime." While this may, at first, seem to lessen the burden of proof from the State, such that the jury could consider the lesser charge only if the State failed to prove every single element of the crime, Wells fails to consider the fact that jury instructions must be considered as a whole. The jury instruction regarding possession with intent listed the elements of the crime and specifically instructed the jury that if it found that "the State has failed to prove one or more of the above elements beyond a reasonable doubt," then the jury must find Wells not guilty of Possession of a Controlled Substance with Intent. The lesser-included-offense instruction stated that, if the jury found Wells not guilty of possession with intent, then it should proceed with its deliberations on the lesser-included offense of simple possession. Accordingly, the jury was informed that, if the State failed to prove each and every element of possession with intent to distribute, then it must acquit on that charge and consider the lesser offense.

¶18.  "[J]ury instructions are to be read as a whole, with no one instruction to be read alone or taken out of context." *Ferguson v. State*, 137 So. 3d 240, 244 (Miss. 2014). The whole of the jury instructions properly informed the jury that the State had to prove each and every element of possession with intent to distribute beyond a reasonable doubt to obtain a conviction. This issue is without merit.

9

**III.  Whether the trial court erred in sentencing Wells as a habitual offender and a second or subsequent drug offender.**

¶19.   The decision to amend an indictment is a question of law which we review *de novo*. ***Williams v. State***, 131 So. 3d 1174, 1176-77 (Miss. 2014).

¶20.   The State amended Wells's indictment twice. On October 11, 2007, ten days after he was indicted, the State moved to amend the indictment to include habitual-offender status under Section 99-19-81, thus making Wells eligible to receive the maximum sentence possible with no possibility of parole. *See* Miss. Code Ann. § 99-19-81 (Rev. 2007). As part of the motion to amend, the State showed that Wells had been convicted in 1993 "in Cause Number 26-654 of the felony of Transfer of a Controlled Substance. . . ." On April 24, 2009, five days before trial and more than eighteen months after the first amendment to the indictment, the State again moved to amend the indictment to charge Wells as a second or subsequent drug offender pursuant to Mississippi Code Section 41-29-147, which would make him eligible to serve twice the maximum sentence for possession with intent to distribute—sixty years.[4] As part of the motion to amend, the State used the same prior drug conviction it had used to amend his indictment eighteen months earlier, stating that Wells had been convicted in 1993 for the felony of transfer of a controlled substance in "Cause number 26,654." On the second day of trial, the trial judge amended the indictment to charge him as a subsequent drug offender. After Wells was convicted that same day, the trial court held a

---

[4]"[A]ny person convicted of a second or subsequent offense under this article may be imprisoned for a term up to twice the term otherwise authorized. . . ." Miss. Code Ann. § 41-29-147 (Rev. 2013).

sentencing hearing and sentenced him to prison for sixty years without the possibility of parole. Wells alleges several errors related to the amendment of his indictment.

> 1. *Whether the indictment as amended insufficiently charged him as a habitual and subsequent offender when it did not specify in which judicial district of Harrison County his prior convictions occurred.*

¶21. Both amendments to Wells's indictment stated that his prior convictions occurred "in the Circuit Court of Harrison County, Mississippi." However, the amendments failed to specify whether the convictions occurred in the First or Second Judicial District of Harrison County. Wells argues that this omission violated Rule 11.03 of the Uniform Rules of Circuit and County Court, which provides in relevant part, that "[t]he indictment must allege *with particularity* the nature or description of the offense constituting the previous convictions, *the state or federal jurisdiction of any previous conviction*, and the date of judgment." URCCC 11.03(1) (emphasis added). Because the amended indictment seeking to enhance Wells's punishment did not state with particularity the precise state jurisdiction of his previous conviction, Wells argues that the amendment is invalid. We agree that the failure to specify the judicial district in the amendment was erroneous.[5] However, Wells failed to object to this error at trial. Accordingly, it is barred from consideration on appeal.

---

[5] "[W]hen two judicial districts are created in a county, the effect is the same for jurisdictional purposes *as if they were two counties*." **Rogers v. State**, 266 So. 2d 10, 16 (Miss. 1972) (citing **Isabel v. State**, 101 Miss. 371, 58 So. 1 (1912)) (emphasis added). In **Evans v. State**, 144 Miss. 1, 108 So. 725 (1925), this Court held that an indictment which alleged that the crime occurred in a county, without distinguishing the judicial district of the county in which it occurred, failed to charge the venue of the crime. The Court held that the trial court erred in overruling the defendant's demurrer to the indictment on those grounds. **Id.**

11

> 2. *Whether the trial court erred in imposing the enhanced sentence by failing to conduct a separate sentencing hearing outside the jury's presence.*

¶22. Wells takes issue with the fact that, immediately following the reading of the jury's verdict, the trial court proceeded to adjudicate his habitual-offender status without dismissing the jury. Wells again cites Rule 11.03, which states that, in determining enhanced sentences, "[s]eparate trials shall be held on the principal charge and on the charge of previous convictions," and that, after conviction, "a hearing before the court without a jury will then be conducted on the previous convictions." URCCC 11.03 (2), (3). Wells argues that the procedure violated Rule 11.03, and therefore the case should be remanded for resentencing.

¶23. In so arguing, Wells relies on the opinion from the Court of Appeals in ***Wilburn v. State***, 856 So. 2d 686 (Miss. Ct. App. 2003). There, with very little explanation of what actually occurred at trial, the Court of Appeals simply stated that the defendant was "not given a proper hearing outside the presence of the jury concerning his prior convictions," and therefore remanded the matter to the trial court for resentencing. ***Id.*** at 689-90. Wells argues that this case is indistinguishable and that we therefore should remand for resentencing.

¶24. The record before us shows that, despite the fact that the sentencing hearing took place in the presence of the jury, there is no doubt that a hearing was held, evidence of the prior convictions was adduced, and the trial judge ruled that Wells was a habitual offender and a second or subsequent drug offender beyond a reasonable doubt without evidence of any influence by the jury and without the jury's making any decision respecting Wells's status as a habitual offender. At that point, the jury's work was done and the presence of the jurors in the courtroom was of no consequence. The issue is without merit.

12

> 3. *Whether the amendment to charge Wells as a second or subsequent drug offender unfairly surprised him and violated his right to due process.*

¶25. We first note that the first amendment to Wells's indictment in October 2007 did not unfairly surprise him at his trial in April 2009, as he had been on notice for nearly eighteen months that the State was seeking to prosecute him as a habitual offender.

¶26. Wells contends that the State's motion to amend his indictment to allege second or subsequent drug-offender status unfairly surprised him and should not have been permitted. The amendment doubled Wells's already-thirty-years-without-parole sentence to sixty years without parole. Although Wells was tried nearly two years after his arrest, the State moved to amend his indictment only five days before trial, on April 24, 2009. Further, it used a prior conviction of which it had been well aware for more than eighteen months, as it was one of the prior convictions on which the State had relied to amend Wells's indictment to achieve habitual-offender status on October 11, 2007. The trial court officially amended the indictment to include second or subsequent drug-offender status on April 30, 2009, the date on which Wells was convicted.

¶27. Rule 7.09 of the Uniform Rules of Circuit and County Court Practice covers amendments to indictments and provides that they are permitted "only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." This Court determines whether habitual-offender amendments to indictments satisfy Rule 7.09 on a case-by-case basis. *McCain v. State*, 81 So. 3d 1055, 1061 (Miss. 2012). In *McCain*, this Court held that, because the defendant was aware of the State's intention to introduce his prior

13

bank-robbery convictions at trial eight months before trial, he was not unfairly surprised by their use for habitual-offender status purposes. *Id.* at 1061-62.

¶28. In *Williams*, 131 So. 3d at 1174, this Court addressed a situation in which the State had moved to amend the defendant's indictment to include habitual-offender status three days before trial, but at sentencing moved in addition that the indictment be amended to include subsequent-drug-offender status. The Court held that, since Williams did not explain why the three-days' notice unfairly surprised him, the State's filing of formal pleadings informing "Williams of its intent to seek enhanced punishment" was sufficient where "[t]he State's motion specifically provided the details of the prior convictions which would be presented to the trial judge for sentence enhancement." *Id.* at 1177.

¶29. Similarly, Wells has not explained to this Court why the State's motion to amend his indictment five days before trial unfairly surprised him, other than saying that the State had waited eighteen months to do so. Accordingly, we find that our holding in *Williams* controls in this case. In *Williams*, a notice period of three days was held sufficient to warn the defendant of the State's intention to enhance his sentence, and here, Wells was informed of the State's intention to double his sentence five days before trial. Therefore, we affirm the Wells's sentence as a habitual offender and subsequent drug offender.

> 4.  *The trial court incorrectly believed it had no discretion in sentencing Wells as a subsequent drug offender pursuant to Section 41-29-147.*

¶30. After the State had introduced evidence of Wells's prior convictions for the purposes of enhanced sentencing as a habitual offender and a subsequent drug offender, the trial court made the following statement.

14

Court:          Okay. Now I have accepted the verdict of the jury and the findings that they made, and that is that you are guilty of the charge of possession of a controlled substance with intent to transfer. Now it's required of me to impose the sentence, and the sentence that I must impose in accordance with the laws of the State of Mississippi are these: That upon the showing that you have been previously convicted of drug activity or drug-related crimes, that the Court must enhance the penalty from that of the specified penalty under the statute, which is 30 years, and that it *must be enhanced to double the penalty*, which means 60 years.

(Emphasis added.) By this statement, we find that the trial court believed it had no choice but to double Wells's sentence as a subsequent drug offender. This was error. Section 41-29-147 says that "any person convicted of a second or subsequent offense under this article *may be imprisoned* for a term up to twice the term otherwise authorized. . . ." Miss. Code Ann. § 41-29-147 (Rev. 2013) (emphasis added). Accordingly, trial judges have complete discretion whether and how much to enhance a defendant's sentence as a subsequent drug offender under Section 41-29-147. Therefore, we remand for resentencing, so the trial judge can determine, in his discretion, whether to enhance Wells's sentence as a subsequent drug offender, or not.

## IV.   Whether Wells's right to a speedy trial was violated.

¶31.   Wells contends, for the first time on appeal, that his constitutional speedy trial rights were violated. The State did not respond to this claim in its brief. We decline to address this claim on direct appeal.

¶32.   At the outset, we remind the State that failure to brief an issue on appeal, "may be treated as a confession of error . . . ." ***Fordice v. Bryon***, 651 So. 2d 998, 1002 (Miss. 1995). This Court, however, is not constrained to do so, if we "can say with confidence that the

15

case should be affirmed." *See* ***Chatman v. State***, 761 So. 2d 851, 854 (Miss. 2000) (affirming the trial court's judgment of conviction despite the State's failure to timely file a brief on direct appeal). We find that to be the case, here, for purposes of this direct appeal.

¶33. As the record shows, Wells failed to obtain a ruling from the trial court on the speedy-trial motion filed on his behalf by the Harrison County Public Defender's Office, four months after his arrest (twenty-five days after his indictment). As we reiterated in ***Kolberg v. State***, 829 So. 2d 29, 88 (Miss. 2002), *overruled on other grounds by* ***Harrell v. State***, 134 So. 3d 266 (Miss. 2014), "it is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same." (Quoting ***Rushing v. State***, 711 So. 2d 450, 456 (Miss. 1998)). This includes speedy-trial motions. ***Kolberg***, 829 So. 2d at 88.

¶34. While the Attorney General's Office should have argued accordingly, its failure to do so, is not automatically fatal, as the dissent finds.

¶35. A claim that the State has violated the constitutional guarantee to a speedy trial requires a fact-intensive analysis of the four-factor balancing test articulated by the Supreme Court in ***Barker v. Wingo***, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), adopted by this Court in ***Wells v. State***, 288 So. 2d 860 (Miss. 1974): (1) length of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. The ***Barker*** balancing test is a fact-intensive inquiry that "necessitates a functional analysis of the right in the particular context of the case." ***Barker***, 407 U.S. at 522. As a matter of judicial necessity and fairness to the State and the trial court, such claims must almost always be first presented and adjudicated in the trial court, where the State is given the opportunity to rebut

16

the claim or factually show good cause for the delay. *See Barker*, 407 U.S. at 522 (speedy-trial right is necessarily relative and does not "preclude the rights of public justice"). Otherwise, there is nothing in the record for a reviewing court to assess under *Barker*.

¶36. Here, the Attorney General's Office cannot be expected to show "good cause" for the delay when no record was made on this issue in the trial court. The Attorney General's Office does not make the record in the trial court; rather, it simply takes the record below and argues the facts and law before this Court.

¶37. This Court is one of appellate jurisdiction only. Miss. Const. art. 6, § 146. The State cannot concede error on the part of the trial court where there is none. *See Chatman*, 761 So. 2d at 854 (affirming trial court's judgment of conviction despite State's failure to file an appellee brief altogether). And we are "not authorized to piece out a decree by making findings of fact." *State Highway Comm'n v. Coahoma County*, 203 Miss. 629, 661, 32 So. 2d 555, 565 (Miss. 1947).

¶38. Because Wells's speedy-trial claim cannot be decided based on the record–or lack thereof–before us, we decline to address the speedy trial claim on direct appeal.

**CONCLUSION**

¶39. We affirm Wells's conviction for possession of cocaine with the intent to distribute. We vacate Wells's sentence under Section 41-29-147 and remand the case to the Harrison County Circuit Court for resentencing consistent with this opinion.

¶40. **CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT, AFFIRMED. SENTENCE OF SIXTY (60) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS VACATED AND THIS CASE IS REMANDED TO THE HARRISON COUNTY CIRCUIT COURT FOR RESENTENCING.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR AND CHANDLER, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND COLEMAN, J. KING, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶41. Larry Wells has made a *prima facie* claim of constitutional dimensions to which the State has not responded in any way. The State has not even acknowledged that the claim was made. The majority's determination that it cannot address an issue raised by the appellant yet left unaddressed by the State sets a disturbing precedent that encourages the State to ignore potentially viable claims affecting the fundamental constitutional rights of persons convicted of crimes. Today's decision removes the necessity for the State, in future cases, to argue against defendants' speedy-trial claims made for the first time on appeal. I would hold the State to the arguments that it has made on appeal, treating its failure to address Wells's claim as a concession that his speedy-trial rights were violated, and I would reverse and render Wells's conviction and sentence due to the denial of his right to a speedy trial. *Smith v. State*, 550 So. 2d 406, 409 (Miss. 1989).

¶42. The United States Constitution and the Mississippi Constitution guarantee the right to a speedy trial to criminal defendants. U.S. Const. amend. VI; Miss. Const. art. 3, § 26. The observance of this right is so vital to our system of justice that, when it is violated, the *sole* remedy is reversal of the conviction and dismissal of the charges with prejudice. *Smith*, 550 So. 2d at 409 (citing *Perry v. State*, 419 So. 2d 194, 197 (Miss. 1982)). The burden of proving good cause for a speedy-trial delay lies upon the State, and the State thus bears the burden of nonpersuasion. *Price v. State*, 898 So. 2d 641, 647 (¶ 9) (Miss. 2005) (citing *Deloach v. State*, 722 So. 2d 512, 516 (¶ 12) (Miss. 1998)). Further, "[i]t is not the duty of

18

the accused to bring himself to trial . . . . It is the State, of course, that bears the burden of bringing an accused to trial in a speedy manner." *McGhee v. State*, 657 So. 2d 799, 804 (Miss. 1995) (citations omitted).

¶43. This Court has held that a "failure to respond [to an issue on appeal] is tantamount to confession of error and will be accepted as such." *Turner v. State*, 383 So. 2d 489, 491 (Miss. 1980). We should treat it as a confession of error, because "an answer to appellant's brief cannot be safely made by this Court, without our doing what appellee should have done, namely, brief the appellee's side of the case. This we are not called on to do." *Id.* (citing *Stampley v. State*, 284 So. 2d 305 (Miss. 1973); *Lawler v. Moran*, 245 Miss. 301, 148 So. 2d 198 (1963); *Gulf M. &. O.R. Co. v. Webster County*, 194 Miss. 660, 13 So. 2d 644 (1943)). In this case, the State has specifically asked us to consider only the arguments made in its brief. The entirety of the State's conclusion says, "Based upon the arguments *presented herein* as supported by the record on appeal the State would ask this reviewing court to affirm the verdict of the jury and sentence of the trial court." (Emphasis added.)

¶44. Accordingly, if Wells has made a *prima facie* claim that his delay was presumptively prejudicial and that there was no good cause for the delay, and the State has done nothing to rebut that presumption or show good cause, we have no choice but to hold the error conceded and rule for the defendant. *See Jackson v. Walker*, 240 So. 2d 606, 606 (Miss. 1970) (Where the appellant filed a brief and no brief was filed by the appellee, this Court concluded that "[s]ince the appellant's brief in the case at bar makes out an apparent case of error, we do not regard it our obligation to look to the record to find a way to avoid the force of the appellant's argument."). Wells has shown a delay of constitutional dimensions and I would

hold that such delay was presumptively prejudicial. Based upon the State's apparent lack of interest in arguing otherwise, I would hold that the presumption of prejudice stands unrebutted. *See Price v. State*, 898 So. 2d 641, 648 (¶ 13) (Miss. 2005) ("Any delay of over eight months is presumptively prejudicial[,]" and, "[o]nce the delay is found presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay . . . ."). While it is true that the trier of fact in this case never held a hearing on Wells's speedy-trial claim, the State's complete failure to argue that particular procedural bar, let alone the merits of the claim itself, is sufficient to convince me that this Court can and should address the issue, holding the State's silence as a confession of error.

¶45. And finally, a call to reason. If this dissent were the majority opinion, Larry Press Wells, a 56-year-old man convicted of selling approximately 1/1000 of an ounce of cocaine, would be released from prison. He has no violent crimes on his record. The State would have been put on notice that, in the future, it would do well to address constitutional issues raised by convicted defendants. Parties before this Court fail to brief issues at their peril, and when an issue left unargued involves the alleged denial of a fundamental constitutional right that stands (or stood) as a firm bulwark against tyranny, I would err on the side of liberty. Larry Press Wells has laid his speedy-trial weights on the scales of justice and found the other side unoccupied. As justices of our state's highest court, we are to look only at the balance of the scales. I find that they clearly weigh in Larry Wells's favor. I would reverse and render his conviction and sentence.

**DICKINSON, P.J., AND COLEMAN, J., JOIN THIS OPINION.**