# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-00859-SCT

*WILLIE DOUGLAS a/k/a WILLIE LUDALL*
*DOUGLAS a/k/a WILLIE L. DOUGLAS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/2022 |
| TRIAL JUDGE: | HON. JAMES McCLURE, III |
| TRIAL COURT ATTORNEYS: | TOMMY WAYNE DEFER |
| | CHARLES NICHOLAS SMITH |
| | ROBERT DALLAS SCHULTZE |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIE DOUGLAS (PRO SE) |
| | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | JAMES STEPHEN HALE, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/18/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1. Willie Douglas appeals his conviction and life sentence as a habitual offender. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On two separate occasions, December 4, 2018, and January 3, 2019, confidential informant Ronald Keen met with law enforcement officers from the Batesville Police

Department to make a controlled purchase of drugs from a man Keen knew as "Buddy Row." On each occasion, Keen's person and vehicle were searched, recording equipment was placed in Keen's vehicle, and Keen was provided $20 in cash. Officers followed Keen to the Bradford Trailer Park and positioned themselves near the trailer park as Keen entered. The audio and video recordings from each occasion showed Keen purchase a substance believed to be cocaine from Buddy Row for $20. Keen then left the trailer park and met officers at an agreed upon location. Officers collected each substance from Keen and put it in an evidence bag.

¶3. The two collected substances were sent to and analyzed by the Mississippi Forensics Laboratory. Erik Frazure, the section chief over the drug analysis section at the Mississippi Forensics Laboratory and an expert in forensic science specializing in drug analysis, opined that the two substances were determined to be cocaine in the amount of 0.169 grams and 0.194 grams.

¶4. Douglas was indicted and charged with two counts of the sale of less than two grams of cocaine. The indictment further charged Douglas as a habitual offender under Mississippi Code Section 99-19-83 (Rev. 2015).

¶5. At trial,[1] Keen recounted the events of December 4 and January 3. Keen testified that on each occasion he met with police who searched his person and vehicle, placed recording equipment in his vehicle, and provided him $20 in cash. He then drove to Bradford Trailer Park where he purchased a substance believed to be cocaine from Buddy Row in exchange

---

[1] Douglas's first trial ended in a mistrial after the jury was unable to reach a verdict.

for $20. Keen identified Douglas as the man he knew as Buddy Row, and he confirmed that Douglas was the man from whom he purchased the drugs.

¶6. Douglas did not testify or present any evidence or testimony at trial. The jury found Douglas guilty on both counts.

¶7. At the sentencing hearing, two witnesses testified regarding Douglas's habitual offender status. Trina Burris, the records department supervisor for the Mississippi Department of Corrections (MDOC), testified that Douglas was previously convicted in Quitman County of grand larceny and served one year and 251 days on that conviction. Lori Priest, director of records management for the Tennessee Department of Corrections (TDOC), testified that Douglas had been previously convicted of aggravated robbery in Shelby County and served approximately seven years on that charge.

¶8. Douglas did not challenge the sufficiency of the evidence supporting his habitual offender status. Both MDOC's and TDOC's pen packs[2] were admitted into evidence without objection from Douglas. Douglas was sentenced, as a habitual offender under Section 99-19-83, to life without parole in the custody of the MDOC.

¶9. Douglas filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the trial court denied. Douglas timely appealed.

¶10. On appeal, Douglas's appellate counsel raised one issue—whether Douglas's sentence

---

[2] A pen pack is a set of documents that shows an inmate's criminal history including the inmate's sentence and time served.

is illegal. Douglas filed a pro se supplemental brief and asserted additional issues.[3]

## DISCUSSION

### I. Illegal Sentence

¶11. Douglas was indicted and charged as a habitual offender under Section 99-19-83. "[Section] 99-19-83 requires that a defendant have been twice convicted, sentenced, and *served* separate terms of one year or more in prison, and one of the felonies must have been a crime of violence." *Akins v. State*, 493 So. 2d 1321, 1322 (Miss. 1986).

¶12. Under Mississippi Rule of Criminal Procedure 14.1(b)(1), if a defendant is eligible for an enhanced punishment because of one or more prior convictions, the State shall

> specify such prior conviction(s) in the indictment, identifying each such prior conviction by the name of the crime, the name of the court in which each such conviction occurred and the cause number(s), the date(s) of conviction, and, *if relevant, the length of time the accused was incarcerated for each such conviction[.]*

MRCrP 14.1(b)(1) (emphasis added).

¶13. The habitual-offender portion of Douglas's indictment stated as follows:

> the said WILLIE LUDALL DOUGLAS having been previously convicted of Grand Larceny in Cause No 5387 in the Circuit Court of Quitman County, Mississippi and sentenced on 3/5/96 to serve a term of one (l) year or more in the Department of Corrections;
>
> and the said WILLIE LUDALL DOUGLAS having been previously convicted of Aggravated Robbery in Cause No 96-08235 in the Circuit Court of Shelby County, Tennessee and sentenced on 5/6/99 to serve a term of one (1) year or more in the Department of Corrections;
>
> and the said WILLIE LUDALL DOUGLAS thereby coming under Section

---

[3] For clarity, we organized Douglas's additional arguments into various categories.

99-19-83, Mississippi Code 1972 Annotated, as amended, a Mississippi habitual offender statute; contrary to the form of the statute in such cases provided, and against the peace and dignity of the State of Mississippi.

¶14. It is undisputed that Douglas's indictment does not include the length of time he actually served on each prior felony conviction. Douglas argues that because his indictment does not include the length of time he was incarcerated for each prior conviction, it is defective under Rule 14.1(b)(1). He claims that as a result of the defective indictment, his enhanced sentence under Section 99-19-83 is illegal and should be vacated.

¶15. "The question of whether an indictment is defective is an issue of law and therefore deserves a relatively broad standard of review, or *de novo* review, by this Court." **Tapper v. State**, 47 So. 3d 95, 100 (Miss. 2010) (citing **Montgomery v. State**, 891 So. 2d 179, 185 (Miss. 2004)).

¶16. Douglas challenges the sufficiency of his indictment for the first time on appeal. As the record reflects, Douglas failed to raise the issue in the trial court. Under Mississippi Rule of Criminal Procedure 14.4(b), "[d]efects respecting the indictment *shall* be raised by written motion." MRCrP 14.4(b) (emphasis added). In **Wells v. State**, the indictment "failed to specify whether the [prior] convictions occurred in the First or Second Judicial District of Harrison County." **Wells v. State**, 160 So. 3d 1136, 1144 (Miss. 2015), *overruled on other grounds by* **Rowsey v. State**, 188 So. 3d 486, 494 (Miss. 2015). Wells argued that because the indictment "did not state with particularity the precise state jurisdiction of his previous conviction," the indictment was invalid and insufficiently charged him as a habitual and subsequent offender. **Id.** The Court agreed "that the failure to specify the judicial district

5

in the [indictment] was erroneous" but found that Wells's failure to object to the error at trial barred the issue from consideration on appeal. *Id.*

¶17.    Recently, in *Young v. State*, the Court considered whether the indictment was sufficient to charge Young as a habitual offender. *Young v. State*, 368 So. 3d 299, 301 (Miss. 2023). Young's indictment "fail[ed] in every respect" to comply with Mississippi Rule of Criminal Procedure 14. *Id.* at 303. The indictment did "not identify or describe the nature of the previous convictions, their dates, their cause numbers, their sentences or the court from which they were rendered." *Id.* Nevertheless, the Court found "Young's failure to object to the defective indictment in the trial court resulted in the waiver of this issue on appeal." *Id.* at 302. The Court explained:

> The State made no attempt to amend Young's indictment in this case. "Mississippi caselaw clearly holds that a trial court may allow amendment of an indictment to charge a defendant as a habitual offender because the amendment does not affect the substance of the charged crime but only the subsequent sentencing." Therefore, had the State sought to amend Young's indictment in the trial court, it would have been permissible as an amendment to its form. *Because the indictment was defective as to its form and could have been amended in the trial court, Young's failure to object in the trial court waived the issue, and Young is barred from raising it for the first time on appeal.*

*Id.* at 303-04 (emphasis added) (citations omitted).

¶18.    Here, as in *Wells* and *Young*, Douglas failed to object to the alleged defective indictment in the trial court, and he raises the issue for the first time on appeal. *Wells*, 160 So. 3d at 1144; *Young*, 368 So. 3d at 303. Contrary to Rule 14.4(b), Douglas did not "raise[]" by written motion" the indictment's failure to include the length of time he actually served on each prior felony conviction. Consequently, the issue is barred from consideration on

6

appeal. *Wells*, 160 So. 3d at 1144; *Young*, 368 So. 3d at 303-04.

II.     *Improper Indictment*

¶19.    Douglas argues "the State filed an improper indictment in violation of the 5th Amendment, Article 3, Sec. 27" because his name was incorrect. Douglas attacks the State's use of his middle name "Ludall" and asserts that his "legal given name is Willie Douglas." But Douglas failed to object to or challenge the indictment on this ground in the trial court. Consequently, this issue is barred from consideration on appeal. *Wells*, 160 So. 3d at 1144; *Young*, 368 So. 3d at 303-04. Notwithstanding the procedural bar, this issue is meritless because certified documents from his previous terms of incarceration indicate that Douglas's middle name is Ludall.

¶20.    Douglas further argues his indictment "states [he was] previously convicted of grand larceny in Cause No. 5387 in the Circuit Court of Quitman County, Mississippi and sentenced on 3/5/96 . . . but [that] that's a false statement by the State." But Douglas fails to explain how this statement is false or what about this statement is false. Moreover, Douglas did not object to or challenge his habitual offender status at trial. Regardless, the record shows that Douglas was in fact previously convicted of grand larceny in Quitman County on March 5, 1996. Thus, this issue is procedurally barred and without merit. *Wells*, 160 So. 3d at 1144; *Young*, 368 So. 3d at 303-04.

III.    *Self-Representation*

¶21.    Douglas asserts he was "denied the right to self-representation on January 31, 2022." Under both our federal and state constitutions, every defendant has the right to conduct his

7

or her own defense. ***Grim v. State***, 102 So. 3d 1073, 1076 (Miss. 2012); ***Howard v. State***, 697 So. 2d 415, 420 (Miss. 1997) (citing U.S. Const. amends. VI, XIV; Miss. Const. art. 3, § 26). "A refusal to allow a defendant who voluntarily and intelligently elects to represent himself is a violation of his or her constitutional rights and requires reversal." ***Fairley v. State***, 275 So. 3d 1012, 1028 (Miss. 2019) (citing ***Gray v. State***, 351 So. 2d 1342, 1345 (Miss. 1977)).

¶22. The record reflects that on January 31, 2022, Douglas was scheduled for trial. But Douglas's trial counsel moved to withdraw after Douglas filed a bar complaint against him. The trial court allowed counsel to withdraw, and it appointed Douglas another attorney. At no time did Douglas ask to represent himself. Accordingly, this claim is meritless.

    *IV.    Recusal*

¶23. Douglas argues the trial judge was biased and should have "*sua sponte*" recused. He asserts that the trial judge "applied several erroneous legal standards and made comments that disrupt[ed] the mode of proceedings" and "made many fundamental errors during [the] court proceedings[.]" For instance, Douglas claims that during voir dire, the trial judge should have addressed Douglas's constitutional "right not to testify" after multiple venire members responded to trial counsel's question on whether they could be fair and impartial if Douglas did not testify. But the trial judge had no obligation to instruct the venire at that time. Instead, it was defense counsel's opportunity to ask various questions to assist him in jury selection. Notably, the record reflects that the jury was instructed on Douglas's constitutional right not to testify.

8

¶24.   Douglas also asserts that a statement the trial judge made during voir dire was biased and prejudicial.  The voir dire discussion, including the trial judge's statement at issue, is as follows:

> Mr. Douglas has been charged with the crime of sale of a controlled substance, and I'm going to read the indictment now for you. The October, 2019, Grand Jury: The Grand Jurors of the State of Mississippi, taken from the body of the good and lawful citizens of the Second Judicial District of Panola County, duly elected, empaneled, sworn and charged for the district, county and state aforesaid at the Grand Jury session aforesaid, in the name and by the authority of the State of Mississippi, upon your oath present: In Count I, that Willie Douglas, late of the district, county and state aforesaid, on or about the 4th day of December, in the year of our Lord 2018, in the district, county and state aforesaid and within the jurisdiction of this Court did willfully, unlawfully, feloniously, knowingly and intentionally sell, barter, transfer, distribute or dispense a controlled substance, to wit, cocaine, less than two grams, to a cooperating individual, in direct violation of Section 41-29-139, Subparagraph A, Subparagraph 1, Mississippi Code 1972 annotated, as amended.
>
> Then in Count II, that Willie Douglas, late in the district, county and state aforesaid, on the third day of January, in the year of our Lord 2019, in the district, county and state aforesaid and within the jurisdiction of this Court, did willfully, unlawfully, feloniously, knowingly and intentionally sell, barter, transfer, distribute or dispense a controlled substance, being cocaine, less than two grams to a cooperating individual or a [confidential informant] in direct violation of Mississippi Code Section 41-29-139, Subparagraph A, Subparagraph 1, as amended.
>
> Ladies and gentlemen, there are two counts because there is alleged two sales of a controlled substance on two separate days; one on December 4th, 2018; the second on January the 3rd, 2019. Is there anyone that has any knowledge about this case? Of course, right now all you know is that there were sales. *You don't know where they are and who was involved, other than Mr. Douglas.* Since this is a controlled substance case, is there anyone that has a problem sitting on a controlled substance case, on a sale of a controlled substance, for any reason?

(Emphasis added.)

9

¶25. Under Canon 3(E)(1) of the Code of Judicial Conduct, a judge should disqualify himself if his "impartiality might be questioned by a reasonable person knowing all the circumstances . . . including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" "A presumption exists that the judge, sworn to administer impartial justice, is qualified and unbiased, and where the judge is not disqualified under the constitutional or statutory provisions, 'the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion.'" *McFarland v. State*, 707 So. 2d 166, 180 (Miss. 1997) (quoting *Green v. State*, 631 So. 2d 167, 177 (Miss. 1994)).

¶26. Here, a reasonable person knowing all the circumstances would not question the judge's impartiality in this case. The trial judge's statement, considering the context in which it was made, does not rise to the level of bias or prejudice. The trial judge's questions and comments were made to ensure that no one was familiar with or had knowledge of Douglas or the case.

¶27. Simply because Douglas disagrees with the trial judge's rulings or actions is not sufficient grounds for recusal. As no motion for recusal was before the court, the trial judge's failure to recuse *sua sponte* was not a manifest abuse of discretion. *McFarland*, 707 So. 2d at 180 (quoting *Green*, 631 So. 2d at 177).

*V. Witness Credibility*

¶28. Douglas questions the credibility of Keen and two law enforcement officers.

10

### A. Ronald Keen

¶29. Douglas argues Keen lacked credibility and had a motive to testify. He explains:

> Ronald Keen was in fact an unlearned illiterate drug ad[dict] working for the narcotic task force . . . under the color of law following their order. Keen did not understand nor remember much about the entire case. His mentally challenge[d] ability was shown on the witness stand. Mr. Keen was honest enough to admit that he couldn't read or write and he had a drug problem. And of course he was willing to do and say anything to get out of trouble. Mr. Keen wasn't competent to be a truthful, credible witness.

¶30. At trial, Keen acknowledged that he had cooperated with law enforcement and had worked as an informant because he had been previously arrested for possession of cocaine and was hoping to better his situation. But Keen testified that at no point was he dishonest or deceitful during the two controlled purchases. He further testified that at no time did he lie to law enforcement.

¶31. "The jury has the job of weighing witness testimony and determining credibility." *Flynt v. State*, 183 So. 3d 1, 11 (Miss. 2015). "We do not make independent resolutions of conflicting evidence[,] . . . [n]or do we reweigh the evidence or make witness-credibility determinations." *Little v. State*, 233 So. 3d 288, 292 (Miss. 2017). "Instead, 'when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony.'" *Id.* (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)).

¶32. Here, the jury rendered its decision after the presentation of all evidence. Although Douglas questions Keen's credibility, Keen's credibility was for the jury to determine. *Id.* (quoting *Gathright*, 380 So. 2d at 1278). Indeed, "the credibility of a witness is solely for

11

the jury to weigh and consider." *Miller v. State*, 983 So. 2d 1051, 1054 (Miss. 2008) (citing *Harris v. State*, 970 So. 2d 151, 156 (Miss. 2007)).

### B.    Law Enforcement Officers

¶33.    Keen asserts Investigators Wesley Hawkins and J.P. Wallace with the Batesville Police Department "made several false statements" and contradicted themselves. Douglas argues their testimonies were unreliable and "incredible as a matter of law." But like Keen, both Hawkins and Wallace were subject to cross-examination, and their credibility was for the jury to determine. *Flynt*, 183 So. 3d at 11; *Little*, 233 So. 3d at 292 (quoting *Gathright*, 380 So. 2d at 1278); *Miller*, 983 So. 2d at 1054 (citing *Harris*, 970 So. 2d at 156).

### VI.    Legality of the Controlled Purchases

¶34.    For the first time on appeal, Douglas asserts his constitutional right to be free from illegal searches and seizures was violated. But because Douglas failed to raise his Fourth Amendment claims before the trial court, this issue is barred from appellate consideration. *Clark v. State*, 40 So. 3d 531, 540 (Miss. 2010) (citing *Ross v. State*, 954 So. 2d 968, 987 (Miss. 2007)), *disagreed with on other grounds by Portis v. State*, 245 So. 3d 457, 470 n.10 (Miss. 2018). Notwithstanding the procedural bar, Douglas's claims lack merit.

¶35.    "Both the Fourth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment of the United States Constitution, and article 3, section 23, of the Mississippi Constitution protect persons from unreasonable searches and seizures." *Fisher v. State*, 354 So. 3d 284, 291 (Miss. 2022) (citing *Cooper v. State*, 145 So. 3d 1164, 1168 (Miss. 2014)). Notably, neither law enforcement nor any agent acting on

behalf of law enforcement searched Douglas or his residence. Regardless, Douglas claims law enforcement needed a search warrant to record the controlled purchases. We disagree.

¶36. "The Fourth Amendment, protection of privacy rather than property rationale, is restricted to private conversations of nonconsenting parties." ***Everett v. State***, 248 So. 2d 439, 443 (Miss. 1971).

> Electronic surveillance, "bugging," does not tread upon constitutional rights of the Fourth Amendment when the consent of one of the parties is first obtained. The expectation of privacy, though perhaps shaken by the mistaken belief that a person to whom one voluntarily confides will not reveal the conversation, does not reach constitutional proportions.

***Id.*** (citing ***Hoffa v. United States***, 385 U.S. 293, 302, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966)). Here, Keen consented to use the audio and video equipment as part of his agreement with law enforcement to capture the controlled purchases. Because Keen's consent was first obtained, there was no constitutional violation. ***Id.*** (citing ***Hoffa***, 385 U.S. at 302). Although Douglas argues Keen was not competent to consent, there is no evidence of that in the record.

¶37. Douglas also claims that law enforcement needed a search warrant before entering the Bradford trailer park because it is privately owned by Melvin Bradford. But law enforcement did not need a search warrant because the record shows that the controlled purchases occurred on a public road within the trailer park. Douglas had no reasonable expectation of privacy on a public road because "[t]he route which any visitor to a residence would use is not private in the Fourth Amendment sense[.]" ***Mitchell v. State***, 792 So. 2d 192, 206 (Miss. 2001) (quoting ***Waldrop v. State***, 544 So. 2d 834, 838 (Miss. 1989)).

13

¶38. Douglas's constitutional right against unreasonable searches and seizures was not violated because no search warrant was required.[4] Accordingly, this issue lacks merit.

*VII. Chain of Custody*

¶39. Douglas suggests the chain of custody was not established. "The test regarding the chain of custody is whether an indication or reasonable inference exists 'of probable tampering with the evidence or substitution of the evidence.'" ***Cyrus v. State***, 248 So. 3d 760, 762 (Miss. 2018) (quoting ***Tubbs v. State***, 185 So. 3d 363, 369 (Miss. 2016)). "A presumption of regularity applies to the actions of the public officers, and the defendant bears the burden of producing evidence that the chain of custody has been broken." ***Id.*** (citing ***Tubbs***, 185 So. 3d at 369).

¶40. Investigators Hawkins and Wallace testified that the substances Keen purchased were documented, placed in an evidence bag, and taken to the crime lab for testing. Frazure confirmed that the evidence was submitted to the crime lab by Investigators Hawkins and Wallace. Frazure identified the evidence by its unique bar code and case number, and he testified that there were no signs of tampering. Douglas's chain-of-custody argument fails.

*VIII. **Brady** Violation*

¶41. Douglas claims the State failed to disclose evidence impeaching Keen's credibility, in violation of ***Brady v. Maryland***, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

---

[4] Douglas also asserts that the trial court "abused its discretion by allowing the prosecutor to admit illegally obtained evidence that . . . the judge knew . . . was obtained without authorization and a search warrant[.]" But because the evidence was not illegally obtained, the trial court did not abuse its discretion by allowing the evidence to be admitted.

According to Douglas, the State "promised Keen something in order for him to testify" and "withheld the [confidential informant] agreement" between Keen and law enforcement.

¶42. "This Court reviews whether a *Brady* violation occurred de novo." *Chisholm v. State*, 365 So. 3d 229, 242 (Miss. 2023) (citing *Thomas v. State*, 45 So. 3d 1217, 1219 (Miss. Ct. App. 2010)). "Under *Brady v. Maryland*, 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Blakely v. State*, 311 So. 3d 593, 602 (Miss. Ct. App. 2020) (quoting *Lofton v. State*, 248 So. 3d 798, 810 (Miss. 2018)). "This includes impeachment evidence." *Id.* (citing *Manning v. State*, 929 So. 2d 885, 891 (Miss. 2006)).

¶43. The following four-prong test applies in determining whether a defendant has proved that a *Brady* violation occurred:

> The defendant must prove: (a) that the State possessed evidence favorable to the defendant (including impeachment evidence); (b) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (c) that the prosecution suppressed the favorable evidence; and (d) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Id.* (citing *Manning*, 929 So. 2d at 891).

¶44. "[E]vidence is not deemed suppressed if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Lofton*, 248 So. 3d at 810). "And the State has no obligation to furnish a defendant with exculpatory evidence that is fully available to the defendant or that could be obtained through reasonable diligence."

15

*Id.* at 602-03 (internal quotation marks omitted) (quoting *Lofton*, 248 So. 3d at 810).

¶45.　The record reflects that Douglas's trial counsel cross-examined Keen about his drug addiction, drug use, and prior drug arrest. Keen was further cross-examined on any deals the State had made with him in exchange for his cooperation as an informant. Keen testified that, although not certain, he believes his prior drug arrest was either dropped or continued in exchange for his cooperation with law enforcement. Thus, it appears Douglas was provided with the information regarding Keen's drug history and used that information to cross-examine Keen at trial. Accordingly, Douglas's *Brady* violation claim is without merit. *Id.* (quoting *Lofton*, 248 So. 3d at 810).

¶46.　Douglas further claims the State "withheld the 2 audio/video disc[s] until the day of trial" in violation of *Brady*. But the record reflects that the State provided the recordings of the controlled purchases to Douglas's trial counsel, and Douglas's trial counsel was aware of and received the surveillance videos before trial. Thus, Douglas's *Brady* violation is meritless.

　　　IX.　*Substance Amount*

¶47.　Douglas argues the controlled substance at issue, cocaine, "was never tested" because it was still in its whole form and not broken into pieces. He asserts that "to weigh a controlled substance, you must separate any and all other items that's not a controlled substance and then weigh the remaining controlled substance." He claims that "[i]f [the controlled substance] would have been tested[,] it would have weighed a lesser amount from when . . . Hawkins and Wallace took it to the crime lab." He further claims that "the

16

substance would [have] been in small pieces."

¶48. But the record contradicts Douglas's argument. Frazure confirmed that both substances Keen purchased from Douglas were in fact tested and that each substance was determined to be cocaine. Douglas neither objected to nor challenged Frazure's findings. Douglas's argument is pure speculation and fails.

*X. Confrontation Clause*

¶49. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. Similarly, article 3, section 26, of the Mississippi Constitution states, "[i]n all criminal prosecutions the accused shall have a right . . . to be confronted by the witnesses against him[.]" Miss. Const., art. 3, § 26.

¶50. Douglas asserts that during his sentencing hearing the State violated his constitutional right to be confronted with the witnesses against him. He claims his Sixth Amendment right to confrontation was violated (1) when Frazure testified about the drug evidence and not the individuals who received and tested the evidence and (2) when Burris and Priest authenticated his prior convictions because, according to Douglas, they were not "the real custodian[s] of record."

¶51. Douglas failed to raise this issue in the trial court. Consequently, the issue is barred. *Wells*, 160 So. 3d at 1144; *Young*, 368 So. 3d at 303-04. Notwithstanding the procedural bar, this issue is meritless.

17

### 1. Frazure

¶52. Douglas claims that Frazure "never actually saw the evidence before trial" and that he "touch[ed] the evidence bags for the first time during trial." But the record clearly contradicts Douglas's claim.

¶53. According to the record, Forensic Scientist Jacqueline Johnson and Senior Support Technician Olivia Tyson received the evidence from Investigators Hawkins and Wallace, Forensic Scientist Steve Sanders analyzed the evidence, and Section Chief Frazure reviewed the evidence. Frazure explained that as the section chief of the drug analysis section, one of his job duties included reviewing the work of the forensic analysts in his section. Frazure testified that after the analyst tests the evidence, he would then "repeat that process backwards" before signing off as the technical reviewer of the evidence. Frazure further testified that he was familiar with the evidence in this case, and he identified each item of evidence as well as the certified report for each item of evidence by his signature.

¶54. "A supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was 'actively involved in the production of the report and had intimate knowledge of the analyses even though he or she did not perform the tests first hand.'" *Jenkins v. State*, 102 So. 3d 1063, 1069 (Miss. 2012) (quoting *McGowen v. State*, 859 So. 2d 320, 340 (Miss. 2003)). Frazure was actively involved in and had intimate knowledge of the analyses. And because Douglas had the opportunity to and did cross-examine Frazure at trial, Douglas's Sixth Amendment right to confront witnesses against him was not violated.

¶55. Douglas also questions why Johnson and Tyson were not subpoenaed to testify. But as this Court has held, "it is unnecessary that every handler of the evidence testify." *Cyrus*, 248 So. 3d at 762 (citing *Tubbs*, 185 So. 3d at 369).

### 2. Burris and Priest

¶56. Douglas asserts that neither Burris nor Priest was the "real custodian[s] of record." But the record reflects that Burris and Priest were each appropriate representatives from their respective departments of corrections to attest to the records.

¶57. Burris testified that she was the records department supervisor for the MDOC. Priest testified that she was the director of records management for the TDOC. Both Burris and Priest testified about their duties as custodians of the records, and they attested that they were familiar with the certified pen packs proving Douglas's prior convictions. Douglas had the opportunity to and did fully cross-examine Burris and Priest, satisfying the Sixth Amendment's right to confrontation.

### XI. Weight of the Evidence

¶58. Douglas argues his guilty verdict was against the overwhelming weight of the evidence. He asserts, "the jury did not give the evidence the proper weight it deserved." We disagree.

¶59. In reviewing a weight-of-the-evidence challenge, the Court must "view the evidence in the light most favorable to the verdict." *Burden v. State*, 347 So. 3d 174, 178 (Miss. 2022) (citing *Little*, 233 So. 3d at 289). "The [C]ourt will only disturb a verdict if it is 'so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction

an unconscionable injustice.'" ***Id.*** (quoting ***Little***, 233 So. 3d at 292).

¶60.    Under Mississippi Code Section 41-29-139(a)(1) (Supp. 2016), in order to convict Douglas of two counts of the sale of cocaine, the State had to show beyond a reasonable doubt that Douglas "knowingly or intentionally . . . s[old] . . . with intent to sell" cocaine. Surveillance videos, Keen's trial testimony, and forensic drug analysis all support the jury's verdict that on December 4, 2018, and January 3, 2019, Douglas knowingly and intentionally sold cocaine to Keen for $20.

¶61.    Considering "the evidence in the light most favorable to the verdict," this Court does not find that the verdict is "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Burden***, 347 So. 3d at 178 (internal quotation marks omitted) (quoting ***Little***, 233 So. 3d at 289, 292).  Thus, Douglas's weight-of-the-evidence argument fails.

    *XII.    Open Courthouse/Public Trial*

¶62.    Both the United States Constitution and the Mississippi Constitution guarantee a criminal defendant the right to a public trial.  U.S. Const. amend. VI; Miss. Const. art. 3, § 26.  Douglas asserts his "trial was closed from the public and held after the courthouse was closed," in violation of his "fundamental constitutional rights."  But Douglas's argument is unsupported and meritless.  While the record reflects that the jury deliberated and returned a verdict after business hours,[5] nothing indicates the trial was closed from the public or held after the courthouse was closed.

---

    [5] The trial transcript indicates that on March 12, 2022, the jury retired to the jury room for deliberations at 4:27 p.m. and returned to the courtroom with a verdict at 6:14 p.m.

20

*XIII.   Ineffective Assistance of Counsel*

¶63.   Douglas argues he received ineffective assistance of counsel.[6]   "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings."  ***Dartez v. State***, 177 So. 3d 420, 422-23 (Miss. 2015) (citing ***Archer v. State***, 986 So. 2d 951, 955 (Miss. 2008)).

> This Court will rule on the merits on the rare occasions where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge."

***Brady v. State***, 337 So. 3d 218, 228 (Miss. 2022) (quoting ***Wilcher v. State***, 863 So. 2d 776, 825 (Miss. 2003)).  Here, the parties assert that the record is adequate to allow the Court to review Douglas's ineffective-assistance-of-counsel claim.

¶64.   "The United States Supreme Court established a two-part test for determining a claim of ineffective assistance of counsel in ***Strickland v. Washington***, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)[.]"  ***Doss v. State***, 19 So. 3d 690, 694 (Miss. 2009).  "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense."  ***Id.*** (quoting ***Strickland***, 466 U.S. at 687).  Under the second prong, Douglas must show that "there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different."  ***Robinson v.***

---

[6] To be clear, Douglas's ineffective-assistance-of-counsel claim involves his second trial counsel.  As previously discussed, Douglas's first defense counsel was allowed to withdraw.

*State*, 585 So. 2d 735, 737 (Miss. 1991). "This review is highly deferential to the attorney, and there is a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance." *Carr v. State*, 873 So. 2d 991, 1003 (Miss. 2004) (citing *Hiter v. State*, 660 So. 2d 961, 965 (Miss. 1995)).

¶65.   Douglas asserts his trial counsel (1) failed to investigate his case, (2) failed to move for discovery, (3) failed to meet with him more than twice before trial, (4) failed to call certain witnesses, and (5) failed to file his pro se motion to dismiss.

### A.   Failure to Investigate

¶66.   Douglas asserts his trial counsel "didn't even realize that the evidence weighed the same from when the investigator's took them to the crime lab and when it came back from allegedly being tested until the day of trial." "A defendant who alleges that trial counsel's failure to investigate constituted ineffectiveness must also state with particularity what the investigation would have revealed and specify how it would have altered the outcome of the trial." *Lattimore v. State*, 958 So. 2d 192, 200-01 (Miss. 2007) (internal quotation marks omitted) (quoting *Woodward v. State*, 843 So. 2d 1, 18 (Miss. 2003)). Douglas fails to explain how this particular investigation would have changed the outcome of his trial. *Id.* (quoting *Woodward*, 843 So. 2d at 18). Moreover, Douglas fails to show that counsel's failure to realize that the evidence weighed the same was deficient or prejudicial. *Doss*, 19 So. 3d at 694 (quoting *Strickland*, 466 U.S. at 687).

¶67.   Douglas further asserts his trial counsel "allow[ed] the State to present and admit two audio/video disc[s] that [counsel] hadn't even seen nor had he even attempt[ed] to make sure

[Douglas] had seen them." But the record reflects both Douglas and his trial counsel received and reviewed the surveillance videos before trial.[7]

### B. Failure to Move for Discovery

¶68. Douglas asserts his trial counsel failed to move for discovery. But the record reflects that Douglas's trial counsel received all discovery from Douglas's first attorney who withdrew after Douglas filed a bar complaint against him.

### C. Failure to Meet with Douglas Before Trial

¶69. Douglas claims his trial counsel was ineffective for failing to contact Douglas more than twice before trial. After the withdrawal of Douglas's first counsel, Douglas's second counsel had one month to prepare for trial. The fact that Douglas's trial counsel contacted him twice during that month does not amount to deficient performance. "[Douglas's] complaints of ineffective assistance of counsel, because his attorney failed to . . . spend more time with him, are insufficient as a matter of law." *Harveston v. State*, 597 So. 2d 641, 642 (Miss. 1992); *see also* *Walker v. State*, 703 So. 2d 266, 268 (Miss. 1997) ("[T]he fact that [defendant's] attorney conferred with him only once does not, in and of itself, establish ineffective assistance of counsel.").

### D. Failure to Call Certain Witnesses

### E. Failure to File Douglas's Pro Se Motion to Dismiss

¶70. Douglas last asserts his trial counsel failed to call certain witnesses[8] and failed to file

---

[7] Notably, because Douglas had had a previous trial, he had seen the recordings.

[8] This includes Douglas's claim that his trial counsel failed to "subpoena the analyst who allegedly test[ed] the evidence."

his pro se motion to dismiss. "With respect to the overall performance of the attorney, 'counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy' and cannot give rise to an ineffective assistance of counsel claim." *Carr*, 873 So. 2d at 1003 (quoting *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995)).

¶71. Regarding his motion to dismiss, Douglas filed the motion pro se while represented by his first counsel. There is no indication that Douglas's second trial counsel had knowledge of the motion. But even if he did, Douglas fails to show how his trial counsel's failure to address the motion falls outside of trial strategy.

¶72. As far as trial counsel's failure to call certain witnesses, the record shows Douglas did not notify his trial counsel about the witnesses before trial. Without knowledge of the witnesses, trial counsel was unable to subpoena them before trial or have them present at trial. Nevertheless, the record reflects that trial counsel requested to present Douglas's witnesses, but the trial court denied his request because the witnesses were not under subpoena or properly disclosed as required by Mississippi Rule of Criminal Procedure 17.3.

¶73. Douglas fails to show that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Doss*, 19 So. 3d at 694 (quoting *Strickland*, 466 U.S. at 687). Thus, Douglas's ineffective-assistance-of-counsel claim fails.

## CONCLUSION

¶74. Douglas's conviction and life sentence as a habitual offender under Section 99-19-83 are affirmed.

24

¶75.   **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**